**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| K.B., <br><br> *Plaintiff*, <br><br> v. <br><br> INTER-CONTINENTAL HOTELS CORPORATION; WYNDHAM HOTELS AND RESORTS, INC.; BEST WESTERN INTERNATIONAL, INC.; AND MARRIOTT INTERNATIONAL, INC.; <br><br> *Defendants*. | Civil Action No. 1:19-cv-01213-AJ |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**WYNDHAM HOTELS & RESORTS, INC.'S MOTION TO DISMISS**

Plaintiff, K.B. ("Plaintiff"), herein responds in opposition to Defendant, Wyndham Hotels & Resorts, Inc.'s ("Wyndham"), Motion to Dismiss ("Motion") and affirms that she has sufficiently and plausibly pled her claim against Wyndham.  In support of her opposition to Wyndham's Motion, Plaintiff asserts the following:

**INTRODUCTION**

The instant Motion is a collection of unsupported factual assertions and non-controlling case law pieced together to distract from the fact that Wyndham knowingly benefits from commercial sex trafficking occurring at hotel properties it receives franchise royalty fees and room rental profits from, including the Holiday Inn Concord Downtown, in violation of the Trafficking Victim Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.  Section 1595 of the TVPRA provides a private right of civil action against *any* party who knowingly benefits from

1

participation in a venture the party knew, or should have known, has engaged in a violation of the statute, including acts of commercial sex trafficking. *See* 18 U.S.C. § 1595. To the extent Wyndham argues New Hampshire law is sufficient to dislodge a claim under the TVPRA, any such state law claim is entirely preempted pursuant to the Supremacy Clause of the U.S. Constitution.

Noticeably lacking from Wyndham's Motion is any factual support for the notion that Wyndham does not financially benefit from room rentals at the Super 8 Tilton/Lake Winnipesauke where the sex trafficking of Plaintiff occurred. Additionally, Wyndham attempts to limit the meaning of "participation in a venture" contained in the TVPRA to requiring performance of an overt act in furtherance of the trafficking that advances what Wyndham knew or should have known. Such a limiting interpretation of Section 1595 conflicts with the construction of the statutory language, and the purpose and intent of the statute. As the central marketplace for commercial sex trafficking, the hospitality industry, including Wyndham, have been on notice for over a decade about commercial sex trafficking occurring on hotel properties that the industry profits from and has publicly acquiesced to have the knowledge, position, and control to address trafficking victimization at their hotels. Yet the hospitality industry, including Wyndham failed to act to stop the dehumanizing victimization that Wyndham knew, or should have known, was going on within its hotel properties.

Wyndham asks this Court to convert the well-settled pleading standard of plausibility into a probability, or even higher, standard and to draw all reasonable inferences in its favor in support of dismissal of Plaintiff's claims. Wyndham further asks this Court to overlook the significant knowing financial benefit Wyndham receives from room rentals and royalties of Wyndham branded hotels where sex trafficking is occurring, including the Super 8 Tilton/Lake

Winnipesaukee.  Wyndham additionally asks this Court to interpret the "participation in a venture" and "knew or should have known" language of the TVPRA in a narrow and limiting fashion when the text of the statute itself is evidence of Congress's intent to expand the conduct that forms the basis of liability to not only actual knowledge, but also constructive knowledge as to what the party should have known.[1]  Each of these arguments are counter to the statutory intent of the TVPRA, exceed Plaintiff's burden at the pleading stage, and are the bases to deny this Motion in its entirety. Plaintiff has adequately and plausibly pled a claim under the TVPRA asserting Wyndham is liable, both directly and indirectly, under said statute.  Accordingly, Wyndham's Motion to Dismiss should be denied in full.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint meet the notice pleading requirements of Federal Rule of Civil Procedure 8.  "Under that lenient rule, the complaint only needs to include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005) citing Fed. R. Civ. P. 8(a).  "A complaint passes muster at the pleading stage if we find that it contains 'enough detail to provide a defendant with fair notice of what the ... claim is and the grounds upon which it rests.'" *Silverstrand Investments v. AMAG Pharmaceuticals, Inc.*, 707 F.3d 95, 101 (1st Cir. 2013) (internal cite omitted).  Therefore, when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), pleadings are liberally construed so that the facts are viewed "in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." *Id.*

"To survive a motion to dismiss for failure to state a claim, 'a complaint must contain

---

[1] Wyndham conflates "general" knowledge of sex trafficking with constructive knowledge when describing (and admitting) the industry's awareness of sex trafficking. Wyndham need not even "generally" be aware of sex trafficking to be on constructive notice.

3

sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombley,* 550 U.S. 544, 570 (2007). The "plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As a result, "a complaint may be dismissed for failure to state a claim 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Rivera v. Rhode Island*, 402 F.3d at 33 (internal cite omitted).

Wyndham's citation of and reference to *Gonzalez-Camacho v. Banco Popular de Puerto Rico* is misplaced, nor is it controlling authority. Shotgun allegations are described as pleadings calculated to confuse the opposing party and court, and mask theories of liability that can prejudice an opponent's case. *See Gonzalez-Camacho v. Banco Popular de Puerto Rico*, 318 F. Supp. 3d 461, 475 (D.P.R. 2018).[2] Shotgun pleadings as a grounds for dismissal are more commonplace in claims for fraud where fraudulent conduct must be pleaded with particularity to satisfy Rule 9 of the Federal Rules of Civil Procedure. No such fraud claims or ulterior motive exists in the instant action where Plaintiff identifies the statutory duty Wyndham owed Plaintiff under the TVPRA, facts in support of her claims, and the theories of liability provided by law upon which relief can be granted. Contrary to Wyndham's argument, Plaintiff separately identifies the conduct attributable to each Defendant, including Wyndham, in her Complaint in support of her causes of action under the TVPRA. *See* Docket No. 1, Complaint ¶¶ 53, 66-68. Wyndham's argument that the wrongdoing has not been segregated by and among the Defendants is unfounded and conflicts with a plain language reading of the Complaint. *Id.* at ¶¶ 51-54, 59-68. Plaintiff incorporates her

---

[2] Wyndham also fails to disclose that Plaintiffs in *Gonzalez-Camacho v. Banco Popular de Puerto Rico* have appealed the matter to the First Circuit Court of Appeals as of January 16, 2019.

factual allegations into the causes of action as the causes of action are borne through the alleged conduct that Plaintiff segregated between the Defendants in the Complaint. *Id.* Furthermore, federal courts, before dismissing a complaint with prejudice on shotgun pleading grounds, have permitted plaintiffs an opportunity to re-plead the complaint. *Gonzalez-Camacho v. Banco Popular de Puerto Rico*, 318 F. Supp. 3d at 461.

### PLAINTIFF'S COMPLAINT SUFFICIENTLY AND PLAUSIBLY PLEADS A CLAIM FOR CIVIL REMEDY AGAINST WYNDHAM UNDER 18 U.S.C. 1595(a)

The Trafficking Victim Protection Reauthorization Act, 18 U.S.C. § 1591, *et. seq.*, criminalizes the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion. Plaintiff identifies herself in her Complaint as a victim of conduct committed by her trafficker in violation of § 1591(a). *See* Docket No. 1 ¶¶ 8, 85. Separately, Section 1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the perpetrators of sex trafficking or the beneficiaries of sex trafficking. 18 U.S.C. § 1595(a). Plaintiff's cause of action for violation of Section 1595 explicitly and unequivocally states a beneficiary theory of liability against Wyndham under §1595. *Id.* at ¶¶ 2, 5, 8, and 71-88.

Congress passed the Victims of Trafficking and Violence Protection Act in 2000 ("TVPA"). Pub. L. No. 106–386, 114 Stat. 1466 (2000). The TVPA has been reauthorized several times in the years since including 2003, 2005, 2008, 2011, 2013, and 2017. The 2003 version of 18 U.S.C. 1595(a) was a narrow remedial statute that established a statutory civil cause of action against perpetrators who were or could have been held criminally liable for their misconduct, to wit: "an individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." *See* Pub. L. No. 108–193, 117 Stat. 2878 (2003). However, in 2008, 18 U.S.C. 1595(a) was intentionally amended with substantially

expanding language creating a category of defendants that could be held liable civilly even in the absence of criminal culpability.

By amending 18 U.S.C. § 1595 in 2008 as part of the Trafficking Victim Protection Reauthorization Act ("TVPRA"), Congress required "whoever," *i.e.*, all businesses, including Wyndham and the entire hospitality industry, to comply with the new law or face new civil liability. *See* Amended Pub. L. No. 110–457, title II, § 221(2), Dec. 23, 2008 (the TVPRA was amended "by inserting '(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)' after 'perpetrator'"). This amendment to the country's systemic human trafficking legislation necessitated a paradigm shift in the hospitality industry.[3]

Compliance with the TVPRA requires businesses, including Wyndham and the entire hospitality industry, to conduct a proactive analysis to determine whether the business financially benefits from participation in a sex trafficking venture. Said businesses, including Wyndham, have a statutory duty to take affirmative steps to prevent sex trafficking on their hotel properties as businesses who financially benefit from sex trafficking through room rentals where sex trafficking is occurring. Wyndham's duty includes the duty to train, implement, monitor and audit hotel employees and properties for sex trafficking where Wyndham receives franchise royalty fees and room rental profits from, including the Super 8 Tilton/Lake Winnipesauke.

---

[3] For example, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, introduced an even broader paradigm shift by requiring change nationally across all business sectors. Employers could no longer discriminate on the basis of race, religion, sex, or national origin. *Id*. Employers were, of course, free to maintain the status quo and continue to discriminate against their employees, but, because of the new law, they were liable for damages on a going forward basis for continuing to discriminate after law-prohibited discrimination. Similarly, businesses within the hospitality industry are free to maintain the status quo pre-2008 and do nothing to determine whether they benefit financially from sex trafficking occurring on their hotel properties but choosing to maintain this status quo post-2008 following the amendment to § 1595 of the TVPRA exposes businesses in the hospitality industry to liability for their purposeful inaction and noncompliance with the law.

Plaintiff's assertions regarding the crucial significance of this expanded change in the statutory language are supported by well-established principles of statutory interpretation.  As a general rule, when interpreting a statute, one must "consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (internal citation and quotations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("In light of the cardinal principles of statutory construction that courts must give effect to every clause and word of a statute.").  There is "a canon of construction that remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968).  This canon of statutory construction is especially applicable to the TVPRA considering that the language of 18 U.S.C. §1595(a) was amended in 2008 to be even broader and more inclusive, for when a "statute is remedial in nature, its terms must be construed in a liberal fashion." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985).  Wyndham asks this Court to analyze the TVPRA in the most narrow and limiting manner to reach a decision to dismiss Plaintiff's Complaint.

## A. Wyndham Knowingly Benefited in Violation of § 1595

Plaintiff has plausibly alleged that Wyndham knowingly benefitted from the venture that trafficked her. *See* Docket No. 1 ¶¶ 5, 12 (e-f), 46, and 71-82.  Plaintiff's theory of beneficiary liability is expressed in her Complaint as follows: "Wyndham receives a percentage of the gross room revenue from the money generated by the operations of all Super 8 hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was sex trafficked." *Id.* at 12 (f); "The local hotel typically pays around 10% of their total revenue back to the parent hotel brand …" *Id.* at ¶ 46.  Rather than comply with its statutory duty under the TVPRA, Plaintiff contends Wyndham has deliberately maintained their sex trafficking detection

deficiencies to maximize profits by failing to allocate expenditures for proper ongoing of training of all employees (not just managers) on signs of sex trafficking, renting rooms where sex trafficking occurs, and in failing to take proper security measures to combat sex trafficking. *Id.* at ¶ 82. Moreover, Wyndham directly benefitted from the trafficking of Plaintiff on each occasion they received payment for rooms that she was being kept in at Wyndham's hotels. *Id.* at ¶ 87. Relying on non-controlling authority from the Southern District of New York case of *Geiss v. The Weinstein Company Holdings LLC*, Wyndham attempts to allege that the proper standard for a "knowing benefit" is a showing of a causal relationship between affirmative conduct furthering the sex trafficking venture and receipt of a benefit, with actual or constructive knowledge of the causal relationship. *See* Docket No. 22-1 at p. 5; *See Geiss v. The Weinstein Company Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019). However, Wyndham's reliance on *Geiss v. The Weinstein Company Holdings LLC* is misplaced nor instructive to the issue of a knowing benefit let alone controlling authority.

Since 2008, there are three distinct causes of action under § 1595: 1) a claim against the trafficker who directly violates § 1591(a)(1); a beneficiary claim against the trafficker who directly violates § 1591(a)(2); and 3) a beneficiary claim against a civil defendant who has not violated § 1591, but who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person *knew or should have known* has engaged in an act in violation of this chapter." *See* 18 U.S.C. § 1595(a) (emphasis added). In *Geiss v. The Weinstein Company Holdings LLC*, however, plaintiff had only asserted a claim against the trafficker who directly violates § 1591(a)(1) and a beneficiary claim against the trafficker who directly violates § 1591(a)(2). *See Geiss v. The Weinstein Company Holdings LLC*, 383 F. Supp. 3d at 168-69. Therefore, the case is entirely inapposite and cannot be employed as a guide toward analyzing the

8

instant matter in which Plaintiff asserts a standalone beneficiary claim under Section 1595 against

a civil defendant who has not violated § 1591, but who knowingly benefits, financially or by

receiving anything of value from participation in a venture which that person *knew or should have*

*known* has engaged in an act in violation of this chapter.[4]   Wyndham, similarly, relies on non-

controlling authority from the Western District of Arkansas case of *Kolbek v. Twenty First Cent.*

*Holiness Tabernacle Church, Inc.*, where plaintiff alleged claims against defendants in direct

violation of Section 1591. *See* Docket No. 22-1 at p. 5; *See Kolbek v. Twenty First Cent. Holiness*

*Tabernacle Church, Inc.*, No. 10 Civ. 4124, 2013 WL 6816174 at *16 (W.D. Ark. Dec. 24, 2013).

In contrast to most of the case law relating to claims against defendants for direct violations

of Section 1591, cases law addressing stand-alone Section 1595 beneficiary claims (against

financial beneficiaries who are *not* alleged to have violated § 1591),  have not required the very

narrow definition of 'knowing benefit' that Wyndham suggests for civil claims under § 1595.   In

a similar beneficiary claim under Section 1595 involving Wyndham, the Court found plausibility

in plaintiff alleging the "knowing benefit" element of Section 1595 through room rentals to the

trafficker. *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 at *7

(S.D. Ohio Oct. 7, 2019); *See Accord H.H. v. G6 Hospitality, LLC,* 2:19-CV-755, 2019 WL

6682152 (S.D. Ohio Dec. 6, 2019); *see also Gilbert v. United States Olympic Committee*, No.18-

cv-00981-CMA-MEH, 2019 WL 4727636 (D. Colo. Sept. 27, 2019), at *16 (holding that even for

§ 1595(a) liability premised on § 1589(b), the forced labor provision of the same chapter, the

defendant is not required to benefit *from* the forced labor or services).  As such, Plaintiff has

---

[4] To state either a perpetrator trafficking claim or a perpetrator financial beneficiary claim, a victim must allege actual knowledge and knowing participation in the sex trafficking venture itself because the plaintiff must prove the criminal violation of § 1591 replete with the requisite mens rea for criminal liability.  A perpetrator trafficking claim requires knowing participation in the direct sex trafficking activities listed in § 1591(a)(1). Likewise, a perpetrator financial beneficiary claim requires allegations the defendant "*knowingly assist[ed], support[ed], or facilitate[ed]" the direct sex trafficking violation of § 1591(a)(1) and financially benefitted therefrom.*" These are the standards applied in *Geiss v. The Weinstein Company Holdings LLC*, 383 F.Supp.3d 156 (S.D.N.Y. Apr. 18, 2019).

plausibly alleged facts sufficient for Wyndham to have knowingly benefitted from the sex trafficking venture of Plaintiff at the Super 8 Tilton/Lake Winnipesauke.

### B. Wyndham Participated in the Sex Trafficking Venture of Plaintiff

Plaintiff has plausibly alleged that Wyndham participated in a venture with Plaintiff's trafficker.  Wyndham relies extensively on non-controlling authority from the 6th Circuit Court of Appeals case of *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), and a string of other non-controlling case law that cite to *United States v. Afyare*,  to define "participation in a venture" under § 1591.[5]  Such dependence is principally misplaced as "participation" under Section 1595 in a beneficiary claim does not require actual knowledge of participation in the sex trafficking itself." *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 at *15 (S.D. Ohio Oct. 7, 2019).  Rather, "liability under § 1595 [for non-perpetrator beneficiary claims] can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in sex trafficking." *Id.*; *see also Jean Charles v. Perlitz*, 937 F. Supp. 2d 276, 289 (D. Conn. 2013) (finding defendants participated in a venture where they maintained affiliations with a school where the sex trafficking of minors was taking place); *see also Gilbert v. United States Olympic Committee*, No.18-cv-00981-CMA-MEH, 2019 WL 4727636 (D. Colo. Sept. 27, 2019), at *16 (holding that entire venture itself does not have to be a actively engaged in TVPA violations, and that the defendant's participation does not need to be an overt act in furtherance of the other members' of the venture TVPA violation.).

---

[5] Wyndham cites to *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (in which the plaintiff only asserted § 1595 perpetrator trafficking claims against defendants who directly violated § 1591(a)(1) and § 1595 perpetrator financial beneficiary claims against defendants who directly violated § 1591(a)(2)) and *Ratha v. Phattana Seafood Co., Ltd*, CV 16-4271-JFW (ASx), 2017 WL 8293174 (C.D. Calif. Dec. 21, 2017) (based in relevant part on a district court ruling that the Tenth Circuit recently reversed and remanded in relevant part in *Bistline v. Parker*, 918 F.3d 849 at 873 (10th Cir. 2019)).

Wyndham relies on the definition of "participation in a venture" supplied in § 1591(e).[6] *See* Docket No. 22-1 at p. 7.  However, the definitions in § 1591(e) clearly purport to only apply to "this section," *i.e.* § 1591.  Therefore, "there is such variation in the connection in which the words are used as to reasonably warrant the conclusion that they were employed in different parts of the act with different intent." *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932).  Additionally, applying the definition of "participation in a venture" in § 1591(e) to the requirements under § 1595 would void the "known or should have known" language of § 1595. *See Accord M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 at *14 (S.D. Ohio Oct. 7, 2019).

The First Circuit Court of Appeals case of *Ricchio v. McLean* is similarly distinguished as, once again, the Court ~~does~~ did  not analyze or address a standalone beneficiary claim under Section 1595(a). *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017).  As such, the First Circuit was careful to hold that the summary of the claims it provide[d] in its decision did not ~~does not~~ "exhaust every variation of statutory violation, and basis for civil liability." *Id.* at 557.  In *Ricchio*, Claim Nos. 1-7, all alleged some form of perpetrator liability under Sections 1589, 1590, 1591, or 1593A and, therefore, the First Circuit employed the universe of criminal case law to define "participation in a venture." *Id.* at 557-58.

Plaintiff avers that Wyndham "participat[ed] in, and facilitated, the harboring and providing of Plaintiff for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and/or commissions." *See* Docket No. 1 at ¶¶ 77, 86 (Wyndham "failed to take reasonable measures to stop sex trafficking from occurring in their hotels.").  Here, Plaintiff's

---

[6] Wyndham cites to *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016) to define venture under § 1595(a). However, *Afyare* is a criminal case that deals exclusively with § 1591.

trafficker had a sex trafficking venture and the Plaintiff "adequately alleges that Defendants repeatedly rented rooms and therefore participated in her trafficking." *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 at \*16 (S.D. Ohio Oct. 7, 2019); *See also Accord H.H. v. G6 Hospitality, LLC,* 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *See also Gilbert v. United States Olympic Committee*, No.18-cv-00981-CMA-MEH, 2019 WL 4727636 (D. Colo. Sept. 27, 2019), at \*16 (holding that entire venture itself does not have to be a actively engaged in TVPA violations, and that the defendant's participation does not need to be an overt act in furtherance of the other members' of the venture TVPA violation.); *See also Bistline v. Parker*, 918 F.3d 849 at 875 (10th Cir. 2019*) (*holding that complaisance in response to exhibitions of TVPA violations is sufficient to show participation in a venture). As such, Plaintiff has plausibly alleged facts sufficient for Wyndham to have participated in the sex trafficking venture of Plaintiff at the Super 8 Tilton/Lake Winnipesauke.

## C. Wyndham Knew or Should Have Known that the Venture Engaged in Sex Trafficking

Plaintiff has plausibly alleged Wyndham knew or should have known of the venture with Plaintiff's trafficker engaged in sex trafficking. Plaintiff brings a standalone financial beneficiary claim "under § 1595(a), which use the words 'should have known,' and, therefore, invokes a negligence standard" for defendant who are not alleged to be perpetrators of Section 1591. *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 at \*8 (S.D. Ohio Oct. 7, 2019); *See also Accord H.H. v. G6 Hospitality, LLC,* 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019). Plaintiff "does not need to prove reckless disregard under Section 1595(a), only that the Defendants 'should have known' about the nature of the venture under a negligence standard [and] this does not require evidence of actual knowledge or conspiracy between the Defendants and the trafficker." *Id.* at \*9; *See also Gilbert v. United States Olympic Committee*,

No.18-cv-00981-CMA-MEH, 2019 WL 4727636 at *19 (D. Colo. Sept. 27, 2019) (affirming that for non-perpetrator liability under Section 1595(a) the standard is "knew or should have known").

Courts have found that the failure to implement policies sufficient to combat a known problem in one's operation can rise to the level of willful blindness or negligence. *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 at *12 (S.D. Ohio Oct. 7, 2019) citing *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. Mar 26, 2009) (finding that the complaint provided sufficient allegations under §1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility was not an isolated incident, and defendants failed to implement and effectuate the appropriate policies to remedy and/or prevent the discriminatory conduct, sexual harassment, and rape.).   Plaintiff has alleged that Wyndham was on notice of the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train their personnel in order to prevent or thwart its occurrence. *See* Docket No. 1 at ¶¶ 50, 73.[7]   In her Complaint, Plaintiff highlights readily available media coverage found through a simple online search engine regarding the role Wyndham plays in sex trafficking as well as specialized trainings Wyndham admits to receiving as early as 2011.[8]   Plaintiff also alleges facts specific to her own sex trafficking, including a sufficient number of signs she alleges would have alerted a diligent hotel brand to her plight. *See*

---

[7] *See also* Wyndham Hotels & Resorts, 2019 Social Responsibility Report: Protecting Our Human Rights (p.30) available at https://corporate.wyndhamhotels.com/wp-content/uploads/2019/07/Wyndham-GRI-2019-Final_web.pdf (last visited Nov. 20, 2019) ("We are committed to combating human trafficking in our communities. We have partnered with Polaris and ECPAT-USA and have signed The Code, which provides training to our team members in an effort to prevent and combat human trafficking and have committed to the 5-Star Promise for Employee Safety with the American Hotel & Lodging Association. Wyndham endeavors to provide safe spaces for our team members and guests."

[8] Distinguishable from *Ratha v. Phattana Seafood Co., Ltd*, CV 16-4271-JFW (ASx), 2017 WL 8293174 at *5 (C.D. Calif. Dec. 21, 2017) wherein intelligence regarding labor trafficking at one particular factory was limited to the reports of advocacy groups and distributor defendants did not own, operate, or have any control over this one factory. The Court held that at the pleading stage plaintiffs had sufficiently alleged violations of the TVPRA but ultimately granted defendant's motion for summary judgment after the facts showed that defendant incurred no benefit from its business relationship with the problem facility because it returned the product in question.

Docket No. 1 ¶¶ 67-68.  As such, Plaintiff has plausibly alleged facts sufficient for Wyndham to have known, or should have known, that the venture engaged in sex trafficking of Plaintiff at the Super 8 Tilton/Lake Winnipesauke.

**PLAINTIFF'S COMPLAINT SUFFICIENTLY AND PLAUSIBLY PLEADS STATE LAW CLAIMS FOR NEGLIGENCE, NEGLIGENT SUPERVISION, OR NEGLIGENT TRAINING**

Plaintiff has plausibly alleged that Wyndham, and their agents, breached its common law duty to use reasonable care to provide for safety at their hotels and to protect against the unreasonable risk posed by sex trafficking.  Considering the statute employed by the Plaintiff is new, the statute was drafted considering modern common law tort cases and sought to enforce certain existing liabilities and fill perceived gaps in local jurisprudence to better combat domestic sex trafficking. *See Isbrandtsen Co. v. Johnson*, 343 U.S. 779 (1952) (there is a presumption that general statutory language incorporates established common-law principles unless a statutory purpose to the contrary is evident.) *See also U.S. v. Lacy*, 952 F.2d 350 (1991) (certain common law defenses may have some application to non-common law crimes except when they would eviscerate the statute.).

Nevertheless, it is important to highlight why historically there was greater responsibility proscribed to innkeepers.  This duty consists of protecting guests against *unreasonable* risk of physical harm, and providing first aid after knowledge *or reason to know* that a guest is ill or injured, and, "to care for them until they can be cared for by others."  Restatement (Second) of the Law of Torts, § 314A (2).  At common law, the degree or kind of care required of an innkeeper "is the highest kind of care known to the law, like that required of a common carrier, and it is imposed by public policy." *Fuller v. Coats*, 18 Ohio St. 343, 348 (1868).  The source of the innkeeper's liability still holds true in that "the wayfaring traveler … exposed on his journey … ha[s] little

protection when [seeking] at night temporary refuge at the wayside inns … and [that] hence there grew up the salutary principle that a host owed to his guest the duty not only of hospitality, but also of protection." *Crapo v. Rockwell*, 48 Misc. 1, 94 N. Y. Supp. 1122 (1905). Under New Hampshire law specifically, "a special relationship exists between an innkeeper and a guest." *Barnes v. N.H. Karting Assoc.*, 128 N.H. 102, 106 (1986).

### WYNDHAM IS DIRECTLY LIABLE FOR FACILITATING SEX TRAFFICKING

As demonstrated in Plaintiff's Complaint, sex trafficking is inextricably intertwined with the hospitality industry and the failures at the Super 8 Tilton/Lake Winnipesauke in Tilton, New Hampshire are only an incidence of a larger systemic failure across the entire Wyndham brand. *See* Docket No. 1 at ¶ 50.  As previously discussed*,* the TVPRA requires businesses, including businesses in the hospitality industry, to conduct a proactive analysis to determine whether the business financially benefits from participation in a sex trafficking venture.  The TVPRA mandates a statutory duty of businesses, including Wyndham, to take affirmative steps to prevent sex trafficking on their hotel properties where the business financially benefits from sex trafficking through room rentals where sex trafficking is occurring.  The TVPRA was drafted in the context of extant common law and sought to enforce certain existing liabilities and fill perceived gaps in common law jurisprudence to directly combat domestic sex trafficking. *See Isbrandtsen Co. v. Johnson*, 343 U.S. 779 (1952) (there is a presumption that general statutory language incorporates established common-law principles unless a statutory purpose to the contrary is evident).

While the conclusive determination of the exact relationship is an issue for the trier of fact after discovery, parent companies, including Wyndham, use independent contractor language in their franchise agreements when referring to franchisor subsidiaries and operating hotels.  The

basis for including independent contractor language is the generally accepted rule that an employer

of an independent contractor is not liable for physical harm caused by the acts or omissions of the

independent contractor.   However, there is a series of long-standing exceptions under which

employers can be held vicariously or directly liable for the tort of their contractors. Restatement

(Second) of Torts §§ 409-429 (1965).  Both the rule and its exceptions reflect the same underlying

concerns.  While the general rule supports the notion that employers should not be held responsible

for that which they do not control and in many instances lack the knowledge and resources to

direct, the exceptions reflect those special situations where it is the employer who is in the best

position to identify and minimize the risks involved in the contractor's activities. *See, e.g.* Prosser

and Keeton on the Law of Torts § 71 at 509-10 (W. Keeton 5ᵗʰ ed. 1984).

   *Wilson v. Good Humor Corp,* 757 F.2d 1293 (1985)*,* is a District of Columbia case that,

while not controlling law, is instructive of how acutely the District of Columbia Circuit Court of

Appeals' ("D.C. Circuit Court") analysis captures the issue presently before this court – how the

Plaintiff establishes that Wyndham owed the Plaintiff a direct duty.  In *Wilson*, plaintiffs were the

parents of a three-year-old girl who was struck and killed by an automobile while crossing the

street to meet a Good Humor® ice cream truck.  On behalf of their daughter, the Wilsons brought

a wrongful death claim against the Good Humor Corporation for direct negligence because Good

Humor's vendors engaged in "inherently dangerous" activity or activity likely to create "peculiar

risks" under specific circumstances.  In a directed verdict, the District of Columbia District Court

ruled that Good Humor could not be found liable under the "inherent danger" exception because,

as they saw it, the selling of ice cream is not a generally dangerous activity that "can be treated in

the same terms as the use of blow torches on pipes, conducting controlled explosions, or things of

that nature, which is the sort of conduct the cases speak of in terms of inherently dangerous activities." *Id.* at 1303.

However, the D.C. Circuit Court reversed on appeal and held that the District Court erred in applying too narrow a view of the inherent danger doctrine and its rationale. Instead, the D.C. Circuit Court concluded that Good Humor could be held directly liable if a jury found that the corporation "knew, or had special reason to know that its operation was likely to create, under particular circumstances, a *peculiar risk* to children absent special precautions, and did absolutely nothing to minimize or even warn its vendors of that risk." *Id.* (emphasis added). Citing The Restatement of Torts, the D.C. Circuit identified that intimately related to the inherently dangerous doctrine is the distinct peculiar risk exception to the general rule of employer non liability in which "one who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, *or which he contemplates or has reason to contemplate when making the contract*, is subject to liability for physical harm caused to such others by the contractors failure to take reasonable precautions against such danger." *Id.*

In *Wilson*, evidence that Good Humor recognized that curbside sales of ice cream created special hazards for customers, especially children, was sufficient in the courts opinion to support a jury finding of Good Humor's direct liability under the inherent danger *or* peculiar risk doctrines. In the instant matter, Plaintiff has provided similar evidence that Wyndham at least recognized that carelessly providing lodging created an environment in which sex trafficking and the commercial sex trade flourished breeding a distinct hazard for all potential victims.

The court in *Wilson* was also careful to highlight that Good Humor's liability also arises from the fact that "Good Humor® vendors are engaged to perform the bulk of Good Humor's

business and that Good Humor undoubtedly contemplates that they will do so through the curbside sale of Good Humor® products from Good Humor® trucks … that the vendors do not possess any special experience or knowledge concerning the risks peculiar to their task and Good Humor by contrast has special and detailed knowledge of the peculiar risks to children involved in its operation and is in the best position to ensure reasonable safety awareness." 757 F.2d 1293 at 1306. Similarly, Wyndham is a hotel brand whose contractors/franchisees run all of their hotels and Wyndham, undoubtedly, contemplates that said contractors/franchisees will do so through providing lodging at Wyndham branded properties while Wyndham collects royalty payments on each sale.  And, while the majority of the Wyndham's contractors/franchisees do not possess any special experience or knowledge concerning the risks peculiar to their task, Wyndham has special and detailed knowledge concerning the peculiar risk of sex trafficking in their operation and is in the best position to ensure reasonable safety awareness.  Therefore, as the failure proves to be systematic across the entire Wyndham brand, it is clear that the negligence is that of the Wyndham, the brand parent company, more so than the franchisor subsidiary or operating hotel.

This same analysis applies to Plaintiff's allegation that Wyndham is directly liable to the Plaintiff as a financial beneficiary from sex trafficking under the TVPRA.  While the liability is statutory, Wyndham possesses the special and detailed knowledge of the peculiar risks of human trafficking in its operation and is in the best position to ensure reasonable safety awareness.  Given that the Plaintiff has demonstrated as such, Plaintiff has plausibly alleged a direct liability theory against Wyndham under the TVPRA necessitating denial of Wyndham's Motion.

**DEFENDANTS ARE INDIRECTLY LIABLE FOR FACILITATING SEX TRAFFICKING AS THE CONDUCT IS IMPUTED UNDER AN AGENCY RELATIONSHIP THEORY AND/OR ALTER EGO THEORY**

"Under New Hampshire law, the necessary factual elements to establish agency involve: (1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control of the agent's actions." *MACTEC Engineering & Consulting, Inc. v. Gradient Corp.*, 2007 WL 1246454, at *2 (Apr. 27, 2007) (internal cite omitted).  "Determining the presence of an agency relationship is a question of fact." *Mulligan v. Choice Mortgage Corp. USA*, 1998 WL 544431, at *8 (Aug. 11, 1998).  "The New Hampshire Supreme Court has adopted the approach advocated in the Restatement (Second) of Agency, which defines 'agency' as "the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Id.* citing Restatement (Second) of Agency § 1 (1958). "An agency relationship exists only when 'a principal gives authority to another to act on his or her behalf and the agent consents to do so.'" *Id.*  "The granting of [such] authority and consent need not be written, but 'may be implied from the parties' conduct or other evidence of intent.'" *Id.*  In the context of franchisor-franchisee relationship, this Court, citing the New Hampshire Supreme Court, requires the franchisor to retain control over the specific instrumentality that caused the harm, the franchisee's security policies, when establishing an agency relationship under the parties franchise agreement. *Cram v. Burger King Corporation*, 2019 WL 4095570, at *4 (D.N.H. Aug. 9, 2019).

Wyndham maintains control over its brand which is reflected in the franchise agreements entered into with each franchisor subsidiary or operating hotel.  The franchise agreements are the instrumentality when establishing an agency relationship by and among Wyndham and its

franchisor subsidiaries or operating hotels. Wyndham exerts control through the franchise agreements in a number of areas: 1) Wyndham maintains control over the Wyndham Rewards system otherwise known as the guest loyalty program; 2) Wyndham maintains control over employee training; 3) Wyndham maintains control over management services by conducting the day-to-day operation of hotels; 4) Wyndham maintains control over Wyndham destinations, its vacation membership interest; and 5) Wyndham maintains control over marketing of the Wyndham brand including advertising, promotional and co-marketing programs.

Plaintiff alleges a number of facts in her Complaint to plausibly support an agency relationship by and among Wyndham and the third party franchisee, Super 8. *See* Docket No. 1 ¶¶ 12, 53. Wyndham, as principal, acknowledges the third party franchisee, as agent, act on behalf of Wyndham through their franchise agreements and their use of the Wyndham brand name and likeness. *See* Docket No. 1 ¶¶ 43-48. In return, the third party franchisee, as agent, accept its undertaking through their franchise agreement with Wyndham and payment of a percentage of the hotel revenue and/or royalties to Wyndham, use of the Wyndham guest loyalty program, and receipt of Wyndham brand marketing, to name a few.[9] *See* Docket No. 1 ¶ 46. Plaintiff alleges how Wyndham exercises control over the third party franchisee through:

- the use of Wyndham's name and likeness.

- setting and enforcement of hotel standards at Wyndham hotels.

- termination of franchise agreement for non-compliance.

- distribution of employee information on human trafficking (or lack thereof).[10]

- providing a process of addressing human trafficking concerns by and among Wyndham.

---

[9] Wyndham Hotel & Resorts, Inc. Form 10-K, at www.sec.gov/Archives/edgar/data/1722684/000172268419000008/wh-20181231x10k.htm#s4600c23f5a8e4920810ab514839add86 at pp. 3.
[10] *Id.* at p. 14.

- employee training and education of human trafficking (or lack thereof).[11]

- inspection and auditing protocols for detection and prevention of human trafficking.

- bookings and rewards programs through Wyndham.[12]

- employment decisions including employee wages.

- building and facility maintenance.

*See* Docket No. 1 ¶¶ 43, 44, 53.

The allegations in Plaintiff's Complaint referenced above identify numerous factual allegations to plausibly support an actual agency theory of liability by and among Wyndham and the third party franchisee, Super 8.  Wyndham exercises the right to control the manner of its brand standards with the third party franchisee by requiring compliance with their brand standards in order to continue the franchise relationship.  Wyndham possesses the right to terminate a franchise agreement with a franchisee for non-compliance with brand standards.  Plaintiff has plausibly alleged an agency relationship by and among Wyndham and the third party franchisee, Super 8, and should be permitted to discover what level of control Wyndham exerts over the manner in which brand standards are complied with by franchisors and franchisees who operate Wyndham branded hotels.  Plaintiff has plausibly alleged an agency relationship by and among Wyndham and the third party franchisee, Super 8, and should be permitted to discover whether its franchise agreements contractually attempt to relieve Wyndham of liability for conduct occurring at its properties as part of the manner in which its brand standards are complied with by franchisors and franchisees who operate Wyndham branded hotels, including Super 8.  Factual disputes of this nature can only be determined in discovery on the merits, not at the pleadings stage.

---

[11] *Id.*

[12] *Id.*

The First Circuit Court of Appeals has stated that plaintiff must show that the parent exercises the type of control "necessary to ascribe to it the activities of the subsidiary" in order to pierce the veil. *See U.S. v. Arkwright, Inc.,* 690 F. Supp. 1133, 1139 (D.N.H. 1998) citing *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 905 (Cir. 1st 1980).  Plaintiff alleges a number of facts in support an alter ego theory of liability against Wyndham through its control over its subsidiary franchisor and franchisee/operating hotel including enforcement of brand standards and the manner of implementing its brand standards in the day-to-day operations of its hotels. *See* Docket No. 1 at ¶¶ 43, 53.

As such, Wyndham's Motion to Dismiss Plaintiff's Complaint should be denied in full.

## PLAINTIFF'S COMPLAINT SUFFICIENTLY AND PLAUSIBLY PLEADS STATE LAW CLAIM FOR UNJUST ENRICHMENT

Plaintiff has plausibly alleged that Wyndham, and their agents, unjustly enriched themselves and financially benefitted at the expense of Plaintiff by increasing profit margins through room rental, lower operating costs, and continued customer loyalty.  In stating her claim for unjust enrichment, the Plaintiff has adequately alleged that: (1) Plaintiff conferred a benefit upon the Defendant; (2) the Defendant had knowledge of the benefit; and (3) it would be unjust for the Movant to keep the benefit without payment. *Nat'l Employment Serv. Corp. v. Olsten Staffing Serv.*, 145 N.H. 158, 163 (2000).  A trial court may "require an individual to make restitution for unjust enrichment if he has received a benefit which would be unconscionable for him to retain." *Petrie-Clemons v. Butterfield*, 122 N.H. 120, 127 (1982).  A plaintiff is entitled to restitution if she "shows that there was unjust enrichment either through wrongful acts or passive acceptance of a benefit that would be unconscionable to permit the defendant to retain." *Cohen v. Frank Developers*, Inc., 118 N.H. 512, 518 (1978).

As such, Wyndham's Motion to Dismiss Plaintiff's Complaint should be denied in full.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Plaintiff respectfully requests this Court deny Wyndham's Motion to Dismiss in full.

Dated: March 9, 2020                                    Respectfully submitted,


                                                       /s/ Michael P. Rainboth
                                                       Michael Rainboth (Bar. No. 5586)
                                                       Leif A. Becker (Bar No. 270867)
                                                       **Coughlin, Rainboth, Murphy & Lown**
                                                       439 Middle Street
                                                       Portsmouth, NH 03801
                                                       Telephone: (603) 431-1993
                                                       Email: mrainboth@nhtrialattorneys.com
                                                       Email: lbecker@nhtrialattorneys.com

                                                       *Attorneys for Plaintiff, K.B*